# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kirsten Hagen Kennedy, | Case No. 14-cv-226 (SRN/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| City of Braham; Robert Knowles, in his individual capacity as the Chief of Police for the City of Braham; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-100) acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30) acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; and Entity Does (1-20) including cities, counties, municipalities, and other entities sited in Minnesota, | |
| Defendants. | |

Lorenz F. Fett, Jr., Sonia L. Miller-Van Oort, Jonathan A. Strauss, Sapientia Law Group PLLC, 12 South 6th Street, Suite 1242, Minneapolis, MN 55402, for Plaintiff.

Jon K. Iverson, Stephanie A. Angolkar, Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Ave S., Bloomington, MN 55438, for Defendant City of Braham and Defendant Robert Knowles.

Oliver J. Larson, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101-2134, for Defendants Michael Campion and Ramona Dohman.

SUSAN RICHARD NELSON, United States District Judge

## I.     INTRODUCTION

This matter is before the Court on the following motions: (1) Defendants City of Braham's and Chief Robert Knowles' Motion to Dismiss [Doc. No. 7]; and (2) Defendant Commissioners Ramona Dohman and Michael Campion's Motion to Dismiss [Doc. No. 15].  For the reasons set forth below, the Court grants in part and denies in part Defendants City of Braham's and Chief Knowles' motion, and grants Defendant Commissioners' motion in its entirety.

## II.     BACKGROUND

Plaintiff Kirsten Hagen Kennedy ("Plaintiff" or "Kennedy") filed this action on January 23, 2014, against the municipal, county, and individual Defendants listed above. (See Compl. [Doc. No. 1].)  In Count I of her Complaint, Plaintiff asserts a claim under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, against all Defendants.  (Id. ¶¶ 216-41.)  In Count II, Plaintiff brings a claim under 42 U.S.C. § 1983 against all individual Defendants, including Chief Knowles and Jane and John Does.  (Id. ¶¶ 242-59.)  In Count III, Plaintiff states an additional claim under 42 U.S.C. § 1983 against all entity Defendants and supervisor Defendants, including John and Jane Entity Does.  (Id. ¶¶ 260-82.)  In Count IV, Plaintiff asserts a 42 U.S.C. § 1983 claim against the Commissioner Defendants and the Minnesota Department of Public Safety ("DPS") Does.  (Id. ¶¶ 283-

2

300.)  Finally, in Count V, Plaintiff brings a common law intrusion upon seclusion claim

against all Defendants.  (Id. ¶¶ 301-07.)

Plaintiff's claims are centered on allegations that law enforcement personnel viewed

her private driver's license information in the Minnesota Department of Vehicle Services

("DVS") driver's license database and the Bureau of Criminal Apprehension ("BCA")

database [collectively "DPS database"] without a legitimate purpose.  (See id. ¶¶ 2-5.)

Specifically, Plaintiff alleges that Defendant Robert Knowles, Chief of the City of Braham

Police Department (id. ¶¶ 15, 28), accessed her personal information for purely personal

reasons, unrelated to his law enforcement duties (id. ¶¶ 50, 52-53).

Kennedy has five children and is divorced.  (Id. ¶ 26.)  Kennedy is a community

organizer in North Branch, Minnesota.  (Id. ¶ 24.)  In her role as a community organizer, she

"successfully advocated to help save the North Branch Police Department from closure or

reorganization."  (Id. ¶ 25.)  Although Plaintiff works with police departments in her

professional capacity, Plaintiff's Complaint suggests that Chief Knowles does not know

Kennedy because of her community organizing work.  Rather, Kennedy alleges that she met

Chief Knowles because they both belong to the same church.  (Id. ¶¶ 27, 29.)  Chief

Knowles is a leader in their church, "sitting on a council that possesses decision-making

authority over congregants," and through his leadership position has access to "private

information regarding Kennedy's standing in the church."  (Id. ¶ 29.)

Plaintiff alleges that before 2002, she "counted Knowles's wife as a friend," as

"[t]hey attended the same church, their children played together[,] and they socialized with

each other."  (Id. ¶ 30.)  In 2002, Kennedy moved away from Minnesota with her family.

3

(<u>Id.</u> ¶ 31.)  She returned to Minnesota in 2008.  (<u>Id.</u>)  Since 2008, Plaintiff's only contact

with Chief Knowles was "church or event related."  (<u>Id.</u> ¶ 32.)

In 2013, Plaintiff contacted Kim Jacobson at the DPS and requested an audit of the

number of times her name was run on the DPS databases.  (<u>Id.</u> ¶ 129.)  Before Kennedy

received the audit she requested, she saw Chief Knowles at a graduation party for Knowles'

nephew.  (<u>Id.</u> ¶ 131.)  Kennedy informed Chief Knowles that she had requested the audit,

and she asked him about the legality of law enforcement officers accessing her private

information.  (<u>Id.</u> ¶¶ 131-33.)  Chief Knowles allegedly replied that "it would not be

allowed or legal" for officers to look up Kennedy's private information.  (<u>Id.</u> ¶ 134.)  As

Kennedy was leaving the graduation party, Chief Knowles allegedly told her, "I've

looked you up a couple of times."  (<u>Id.</u> ¶ 135.)

After this exchange at the graduation party, but before Plaintiff received the audit

she requested, Plaintiff alleges that Chief Knowles called her.  (<u>Id.</u> ¶ 136.)  Chief

Knowles allegedly told Kennedy that his name was going to appear in the audit.  (<u>Id.</u> ¶

137.)  He also told her, "let's be clear, you asked me to look you up and it was four

times."  (<u>Id.</u> ¶ 138.)  Not only was this alleged phone call unsolicited, but Plaintiff also

claims that she never asked Chief Knowles to look up her private data.  (<u>Id.</u> ¶¶ 139-40.)

On, or about, June 3, 2013 Plaintiff received a letter from Sally Hoy, the Chief

Administrator of the City of Braham.  (<u>Id.</u> ¶ 145.)  In the letter, Hoy explained to

Kennedy that only one Braham police officer was responsible for the 49 City of Braham

lookups of her name.  (<u>Id.</u> ¶ 146.)  Additionally, Hoy explained that she spoke with Chief

Knowles about his use of the database, and Chief Knowles "acknowledged that the only

person he queried that much was Kennedy." (Id. ¶ 147.) Hoy also stated in the letter that

Chief Knowles informed her that "Kennedy was a friend to him and his wife, and that

[Kennedy] had requested him to keep an eye on [her] driver's license record to make sure

nothing was on it." (Id. ¶ 148.) Kennedy contends that she never had a friendship with

Chief Knowles. (Id. ¶ 149.) Rather, she only considered Knowles' wife her friend. (Id.)

Moreover, Kennedy alleges that she never requested Chief Knowles to check her driver's

license record. (Id. ¶¶ 150-52.) Plaintiff alleges that Chief Knowles sought to cover up

his illegal actions by fabricating Kennedy's request. (Id. ¶ 153.)

On June 5, 2013, Kennedy alleges that she learned from the DPS that officers from

various departments and agencies accessed her driver's license information 71 times since

2007. (Id. ¶ 143; see Compl., Ex. A [Doc. No. 1-1].) The audit also indicated that of the 71

lookups, personnel from the City of Braham obtained her private data 49 times from 2009 to

2012. (Compl. ¶ 144 [Doc. No. 1].) Reading the audit and the facts alleged about the letter

from Hoy, as a whole, the Court concludes that it is plausible that all 49 City of Braham

lookups were made by Chief Knowles. The chart below itemizes the number of lookups

allegedly made by each Defendant for a purpose not permitted under the DPPA:

| Entity | Number of times accessed | Date and Time |
|---|---|---|
| Braham Police Department (Chief Knowles) | 49 (Id.; Compl., Ex. A "Audit" at 1-4 [Doc. No. 1-1].) | 07/23/2007 at 4:06 pm<br>05/04/2009 at 4:36 pm<br>05/05/2009 at 3:31 pm<br>05/06/2009 at 11:29 am, 12:03 pm, 12:17 pm<br>05/12/2009 at 4:01 pm<br>10/08/2009 at 12:30 pm<br>11/10/2009 at 2:04 pm, 2:04 pm, 2:05 pm, 2:05 pm<br>12/25/2009 at 9:21 am<br>12/31/2009 at 10:52 am, 10:52 am, 10:52 am, 10:53 am, 10:53 am<br>02/09/2010 at 8:53 am<br>03/30/2010 at 11:21 am, 11:21 am, 11:21 am, 11:22 am<br>07/21/2010 at 2:21 pm<br>10/05/2010 at 9:11 am, 9:11 am, 9:12 am, 9:12 am<br>12/26/2010 at 1:25 pm, 1:25 pm 1:25 pm, 1:26 pm<br>03/14/2011 at 9:17 am, 9:18 am<br>06/28/2011 at 9:17 am, 9:18 am, 9:18 am<br>07/18/2011 at 3:06 pm<br>09/20/2011 at 9:58 am<br>10/28/2011 at 8:23 am, 8:24 am, 8:24 am<br>01/05/2012 at 1:35 pm, 1:35 pm, 1:35 pm, 1:36 pm<br>01/18/2012 at 12:29 pm<br>04/24/2012 at 2:23 pm<br>05/14/2012 at 9:53 am |
| Cambridge Driver License Office | 1 (id. at 4-5.) | 12/27/2002 at 3:09 pm<br>12/07/2005 at 12:28 pm |

|  |  | 03/22/2006 at 2:08 pm |
|---|---|---|
|  |  | 10/19/2007 at 3:17 pm |
|  |  | 10/19/2007 at 3:18 pm |
|  |  | 10/22/2007 at 8:55 am |
|  |  | 11/20/2007 at 1:06 pm |
|  |  | 12/18/2007 at 9:58 am, 10:08 am, 3:04 pm, 3:59 pm |
|  |  | 12/19/2007 at 12:53 pm, 2:14 pm |
|  |  | 01/08/2008 at 2:57 pm |
|  |  | 03/31/2008 at 3:10 pm |
|  |  | 03/26/2009 at 3:31 pm |
|  |  | 03/14/2011 at 12:05 pm |
| Chisago City Deputy Registrar | 1 (id. at 5.) | 03/18/2011 at 3:21 pm |
| DVS St. Paul Main Office | 1 (id.) | 08/02/2007 at 11:36 am |
| Minnesota Department of Administration's Risk Management Division | 3 (id.) | 09/17/2008 at 3:51 pm |
|  |  | 09/21/2009 at 9:31 am |
|  |  | 09/01/2010 at 12:09 pm |

Plaintiff alleges that the searches detailed above were not based on any legitimate law-enforcement, governmental, judicial, or litigation-related purpose. (Compl. ¶¶ 48, 56, 157-58 [Doc. No. 1].) Significantly, she alleges that "[w]hen Defendant personnel viewed [her] private information, they did not do so to carry out police functions." (Id. ¶ 186.) Rather, Kennedy claims that these inquiries were made "for purposes that were purely personal." (Id. ¶¶ 50, 52-53.) In fact, before filing suit, Plaintiff requested the Entity Defendants "to provide her with any permissible reason it or its employees, agents, and officers had in looking up her information," but Defendants allegedly "never provided any legitimate permissible reason." (Id. ¶ 159.) Plaintiff alleges that to the extent that any

permissible reason could exist for accessing her private data, she has eliminated accesses related to those permissible reasons from the DPS audit excerpt she attached to her Complaint.  (Id. ¶ 56.)

Plaintiff describes the driver's license information at issue.  She alleges that individual Defendants viewed the following private information: "her home address, color photograph or image, date of birth, eye color, height, weight, medical information, driver's identification number, and upon information and belief, social security number."  (Id. ¶ 54.) Plaintiff contends that the DPS database includes the social security number of drivers, including hers.  (Id. ¶ 113.)  She also alleges that the DPS database includes drivers' health information, including her own medical information.  (Id. ¶ 114.)  Kennedy alleges that when she submitted all of this private data, she relied on "the promise of confidentiality made by DPS."  (Id. ¶ 174-75.)  The Court held oral argument on Defendant City of Braham's Motion to Dismiss on June 19, 2014 [Doc. No. 23].[1]

## III.   DISCUSSION

### A.   Standard of Review

Defendants move to dismiss Plaintiff's Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  However, the

---

[1]   The Court earlier ordered that, based on the parties' stipulation, it would rule on the Defendant Commissioners' Motion to Dismiss [Doc. No. 15] based on the parties written submissions, without oral argument.  (05/28/2014 Order at 1 [Doc. No. 20].)

Court need not accept as true wholly conclusory allegations, <u>Hanten v. School District of Riverview Gardens</u>, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled.  <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990).  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss.  <u>See</u> Fed. R. Civ. P. 12(d).  The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, <u>Mattes v. ABC Plastics, Inc.</u>, 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir. 2007).[2]

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  <u>Id.</u> at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  <u>Twombly</u>, 550 U.S. at 556.

---

[2]   Attached to her Complaint, Plaintiff submitted an excerpt from an audit prepared by the DPS showing individual accesses of Plaintiff's driver's license information, detailing the date and time of each access, and showing the "station" through which the officer obtained her information.  (Compl., Ex. A [Doc. No. 1-1].)  The Court references this document as needed throughout the Order.

### B.      Plaintiff's Claims

Plaintiff has failed to state cognizable claims in Counts II through V of her

Complaint, and the applicable statute of limitations bars some of Plaintiff's Count I

claims asserted against Chief Knowles and the City of Braham.  Below, the Court begins

by addressing Plaintiff's § 1983 and intrusion upon seclusion claims against all

Defendants.  The Court then proceeds by addressing Plaintiff's DPPA claims against

each Defendant individually.

### 1.      Counts II, III, IV: Section 1983 Claims

Counts II, III, and IV of Plaintiff's Complaint state causes of action under 42 U.S.C.

§ 1983.  (Compl. ¶¶ 242-300 [Doc. No. 1].)  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State . . . , subjects, or causes to be subjected, any citizen of
> the United States . . . to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress . . . .

In Count II, Plaintiff alleges that Chief Knowles and the other unnamed individual

Defendants in this lawsuit, acting under color of state law, violated her statutory rights under

the DPPA, her constitutional rights under the Fourth and Fourteenth Amendments, and her

rights under the laws of the State of Minnesota.  (See Compl. ¶¶ 247-49.)  In Count III,

Plaintiff alleges that the entity and supervisor Defendants are liable for the individual

Defendants' custom and practice of improperly accessing information; their own failure to

monitor and enforce the rules; and their failure to train, supervise, and impose proper

discipline.  (See id. ¶¶ 263-80.)  In Count IV, Kennedy alleges that the Defendant

10

Commissioners and the DPS Does are liable under § 1983 for creating, maintaining, and providing access to the database that included Kennedy's private data.  (See id. ¶ 283-300.)

The Defendants in this case assert numerous arguments in opposition to Plaintiff's § 1983 claims.  First, they argue that the § 1983 claims are barred by the applicable statute of limitations.  (See, e.g., Defs.' Mem. at 7-8 [Doc. No. 10].)  Second, they argue that Plaintiff's § 1983 claims based on their alleged DPPA violations fail because the DPPA is not separately enforceable under § 1983.  (See id. at 8.)  Third, Defendants assert that Plaintiff's § 1983 claims based on alleged violations of her constitutional rights fail because Plaintiff has not stated a legally-cognizable deprivation of a constitutional right.  (See id. at 9.)  Finally, although Defendants do not raise this argument themselves, Plaintiff's § 1983 claims that are based on violations of Minnesota state law fail because § 1983 cannot be used to enforce state law.  Because the Court agrees with Defendants' latter two arguments, each of which is dispositive, and because the Court finds that § 1983 cannot be used to enforce state law, it declines to address the statute of limitations issue as it applies to Plaintiff's § 1983 claims.

### a.  DPPA basis

Plaintiff's § 1983 claims fail to the extent that they are based on alleged violations of the DPPA.  The reasoning that follows echoes this Court's holding in Rasmussen v. Chisago County, et al., 991 F. Supp. 2d 1065, 1072-74 (D. Minn. 2014).

As noted above, a plaintiff may generally use § 1983 to enforce federal statutory rights.  In order to determine "whether a statute creates an individually enforceable federal right," a plaintiff must demonstrate that "'(1) Congress intended the statutory provision to

11

benefit the plaintiff; (2) the asserted right is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the provision clearly imposes a mandatory obligation upon the states.'" Midwest Foster Care & Adoption Ass'n v. Kincade, 712 F.3d 1190, 1195 (8th Cir. 2013) (citation omitted).  A statute that meets these criteria is presumed to be enforceable under § 1983. Id. at 1195-96 (citing Blessing v. Freestone, 520 U.S. 329, 341 (1997)).  However, "[a defendant] can rebut this presumption by showing either that Congress explicitly foreclosed a remedy under § 1983 or implicitly did so, 'by creating a comprehensive enforcement scheme that is incompatible with individual enforcement'" under § 1983. Id. at 1196 (quoting Blessing, 520 U.S. at 341); see Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999) (explaining that "[c]ourts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive.").  According to the United States Supreme Court, "[a] private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 121 (2005) (citations omitted).

Even if Plaintiff was able to demonstrate that the DPPA constitutes a protectable "right" under the relevant three-prong test, and therefore, that it is presumptively enforceable under § 1983, that presumption is rebutted because Congress has explicitly foreclosed a remedy under § 1983 by creating a comprehensive DPPA enforcement scheme. The DPPA makes the following remedies available in a civil action: (1) actual damages (not less than liquidated damages of $2,500); (2) punitive damages; (3) reasonable attorneys'

fees and costs; and (4) other appropriate equitable relief.  See 18 U.S.C. § 2724(b).  It also provides for criminal fines and civil penalties.  Id. § 2723.

In addition, the private remedy contained in the DPPA's comprehensive enforcement scheme is more restrictive than that provided under § 1983, in terms of the category of persons from whom a plaintiff may seek a remedy, as well as the period of time in which a plaintiff may seek a remedy.  First, like the DPPA, § 1983 allows for recovery of damages and injunctive relief, as well as costs and a reasonable attorney's fee, in a private cause of action.  See 42 U.S.C. §§ 1983, 1988(b).  However, while an individual may seek injunctive relief under § 1983 against a state official acting in his official capacity, the DPPA expressly precludes civil suits against states and state agencies.  See Heartland Academy Community Church v. Waddle, 427 F.3d 525, 530 (8th Cir. 2005) (finding, in a § 1983 case, that there is an exception to sovereign immunity for state officials acting in their official capacity "where the relief sought is prospective and not compensatory"); 18 U.S.C. § 2724(a) (stating that a "person" who violates the Act shall be liable); id. § 2725(2) (stating that, for purposes of the DPPA, "'person' means an individual, organization or entity, but does not include a State or agency thereof").

Second, as discussed in more detail below, DPPA claims are subject to a four-year statute of limitations.  On the other hand, § 1983 actions "brought in Minnesota are subject to a six-year statute of limitations."  See McKenzie v. Fabian, No. 08-cv-164 (PAM/JSM), 2008 WL 5122118, at *7 n.5 (D. Minn. Nov. 21, 2008) report and recommendation adopted, No. 08-cv-164 (PAM/JSM), 2009 WL 259726 (D. Minn. Feb. 3, 2009) aff'd, 359 F. App'x 684 (8th Cir. 2010) (citing Egerdahl v. Hibbing Community College, 72

F.3d 615, 618 n.3 (8th Cir. 1995)).  Thus, allowing Plaintiff to pursue her DPPA claims through § 1983 would allow her to enlarge the applicable statute of limitations. Accordingly, the DPPA cannot be enforced through § 1983.

This Court's determination that Plaintiff may not use § 1983 to enforce her rights under the DPPA aligns with decisions from several other courts, including multiple district courts within the United States Court of Appeals for the Eighth Circuit.  See, e.g., Roberts v. Source for Public Data, 606 F. Supp. 2d 1042, 1046 (W.D. Mo. 2008) (dismissing plaintiffs' claim because, "[g]iven [the DPPA's] comprehensive remedial scheme, the [c]ourt must presume that Congress intended that the enforcement scheme it created in the DPPA would be the exclusive remedy for violations, precluding resort to § 1983"); Nelson v. Jesson, No. 13-cv-340 (RHK/JJK), 2013 WL 5888235, at *7 (D. Minn. Nov. 1, 2013) (noting that "the DPPA's remedial scheme, which is both comprehensive and more restrictive than § 1983, expresses Congress's intent to preclude other means of enforcement"); see also Kiminski v. Hunt, No. 13-cv-185 (JNE/TNL), 2013 WL 6872425, at *14 (D. Minn. Sept. 20, 2013) (holding that the DPPA precludes a § 1983 action because the inability to sue state officials in their official capacity under the DPPA is "significant, especially in light of the statute's overall comprehensive remedial scheme").

Plaintiff urges the Court to follow Collier v. Dickinson, 477 F.3d 1306 (11th Cir. 2007), in which the Eleventh Circuit Court of Appeals determined that the DPPA is separately enforceable under § 1983.  (See Pl.'s Resp. to Defs. at 34-44 [Doc. No. 13].) In Collier, the Eleventh Circuit determined that the relief provided under the DPPA and §

14

1983 is "complementary" rather than "conflicting."  477 F.3d at 1311.  The court did not

examine the nature of the available remedies; instead, it merely stated generally that the

DPPA did not create so many statutory remedies as to make it unlikely that Congress

intended to preserve a § 1983 claim.  Id.

This Court respectfully disagrees with the reasoning set forth in Collier because

the Eleventh Circuit did not address the fact that, under the DPPA, a plaintiff is precluded

from obtaining relief from state officials acting in their official capacity (as opposed to

the limited availability of such relief under § 1983).  Nor did the court address the

difference between the statutes of limitations applicable to each cause of action.  As

noted above, the Court finds that these considerations, along with the comprehensive

nature of the DPPA's remedial scheme, demonstrate Congress' intent to foreclose a

remedy under § 1983.  Therefore, Plaintiff's § 1983 claims, as stated in Counts II, III, and

IV of the Complaint, fail to the extent that they are based on underlying DPPA violations.

### b.  Federal constitutional bases

Plaintiff's § 1983 claims additionally fail to the extent that they are based on alleged

violations of her constitutional rights.  The Court's reasoning that follows is also based upon

its holding in Rasmussen.  See 991 F. Supp. 2d at 1074-77.

"The essential elements of a constitutional claim under § 1983 are (1) that the

defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived

the plaintiff of a constitutionally protected federal right."  L.L. Nelson Enterprises, Inc. v.

County of St. Louis, Mo., 673 F.3d 799, 805 (8th Cir. 2012) (citation omitted).  Here,

Plaintiff alleges that each individual Defendant, acting under color of state law, violated her

Fourteenth Amendment right to privacy, as well as her Fourth Amendment right to be free from an unconstitutional search, by obtaining her personal driver's license information without a legitimate purpose.  (See Compl. ¶¶ 243-50 [Doc. No. 1].)  However, the facts alleged by Kennedy do not raise a right to relief under either basis.

The Eighth Circuit explained in Van Zee v. Hanson that "to violate the constitutional right of privacy," which is guaranteed by the Fourteenth Amendment,:

> the information disclosed must be either a shocking degradation or an egregious humiliation . . . , or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information . . . To determine whether a particular disclosure satisfies this exacting standard, [the court] must examine the nature of the material . . . to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession.

630 F.3d 1126, 1128 (8th Cir. 2011) (internal quotations and citations omitted).  Thus, the "protection against public dissemination of information is limited and extends only to highly personal matters representing 'the most intimate aspects of human affairs.'"  Eagle v. Morgan, 88 F.3d 620, 625 (8th Cir. 1996) (citation omitted).  According to the Eighth Circuit, these standards "set a high bar . . . and many disclosures, regardless of their nature, will not reach the level of a constitutional violation."  Cooksey v. Boyer, 289 F.3d 513, 516 (8th Cir. 2002).  Similar to the Fourteenth Amendment standards, "[a] search occurs under the Fourth Amendment when . . . 'the government violates a subjective expectation of privacy that society recognizes as reasonable.'"  Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013) (quoting Kyllo v. United States, 533 U.S. 27, 31-33 (2001)).

The courts that have analyzed these standards in the context of driver's license information have found that an individual does not have a legitimate expectation of privacy

in such information.  For example, in <u>Travis v. Reno</u>, the court concluded that there is no

legitimate expectation of confidentiality – and, therefore, no constitutional right to privacy –

in an individual's name, address, telephone number, photograph, social security number,

driver identification number, and medical or disability information.  12 F. Supp. 2d 921, 925

(W.D. Wis. 1998), <u>rev'd on other grounds</u>, 163 F.3d 1000 (7th Cir. 1998); <u>see also</u> <u>Pryor v.</u>

<u>Reno</u>, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999) (stating that "there is no constitutional

right to privacy in motor vehicle record information which the DPPA enforces"), <u>rev'd on</u>

<u>other grounds</u>, 528 U.S. 1111 (2000); <u>Condon v. Reno</u>, 155 F.3d 453, 464 (4th Cir. 1998)

(stating that motor vehicle record information "is the very sort of information to which

individuals do not have a reasonable expectation of privacy"), <u>rev'd on other grounds</u>, 528

U.S. 141 (2000).

Similarly, in <u>Kiminski v. Hunt</u>, a judge within this District determined that "[n]one

of that data qualifies as so extremely personal as to trigger constitutional – as opposed to

statutory – privacy protections."  2013 WL 6872425, at *15 (noting that "[n]ot even

statutory protection existed for [driver's license record information] until 1994, when

Congress passed the DPPA"); <u>see also</u> <u>Nelson</u>, 2013 WL 5888235, at *5 (finding no

reasonable expectation of privacy in the information the plaintiff alleged was contained in

his motor vehicle records, which included his name, date of birth, driver's license number

and status, address, photograph, weight, height, and eye color).

Plaintiff argues that the Supreme Court's decision in <u>Maracich v. Spears</u>, 133 S.

Ct. 2191 (2013), demonstrates the importance of the privacy rights created by the DPPA.

(<u>See</u> Pl.'s Resp. to Defs. at 21-22 [Doc. No. 13].)  In that case, the Court considered

whether an attorney's solicitation of clients constituted a permissible purpose for disclosure under the DPPA.  See Maracich, 133 S. Ct. at 2195-96.  In doing so, it noted that:

> If (b)(4) were read to permit disclosure of personal information whenever any connection between the protected information and a potential legal dispute could be shown, it would undermine in a substantial way the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records.
> . . .
> An additional reason to hold that (b)(4) does not permit solicitation of clients is because the exception allows use of the most sensitive kind of information, including medical and disability history and Social Security numbers. To permit this highly personal information to be used in solicitation is so substantial an intrusion on privacy it must not be assumed, without language more clear and explicit, that Congress intended to exempt attorneys from DPPA liability in this regard.

Id. at 2200, 2202.  However, Maracich is not dispositive because the Court did not address whether an individual has a *constitutional* right to privacy in driver's license record information.  That issue was not before the Court, and the statements regarding privacy that the Court did make cannot be understood to refer to a constitutional right rather than to a statutory right.

While the Eighth Circuit has not ruled on this exact issue, it has determined that the disclosure of similar information is insufficient to state a claim for a violation of the constitutional right to privacy.  In McCaslin v. Campbell, the court determined that the plaintiff had not asserted a constitutional violation despite allegations that her driver's license information, social security number, bank account numbers, criminal record, previous landlords, previous names, and personal references were disclosed without her consent.  No. 95-4041, 1997 WL 148824, at *1 (8th Cir. Apr. 2, 1997).  The court found

18

that much of the information was public record and that "the remaining information did not involve the most intimate aspects of human affairs." Id. at *2. Therefore, the court affirmed the district court's dismissal of the plaintiff's claim under Rule 12(b)(6). Id. at *1; see also Cooksey, 289 F.3d at 516 (finding that disclosure of the fact that an individual was receiving psychological treatment for stress was "neither shockingly degrading [n]or egregiously humiliating"); Eagle, 88 F.3d at 628 (explaining that "[b]ecause [the plaintiff] ha[d] no legitimate expectation of privacy in the contents of his criminal history file, [the court could not] agree that the officers violated his constitutional right when they engaged in an unwarranted search of this material.").

In this case, Plaintiff alleges a privacy interest in her driver's license information. Plaintiff claims that her address, color photograph, date of birth, weight, height, eye color, driver identification number, driving record, and medical information were improperly accessed. (Compl. ¶ 44 [Doc. No. 1].) With the exception of Plaintiff's driving record and medical information, all of this information is included on the face of a driver's license, and individuals show their driver's licenses to strangers on a daily basis. Moreover, much of this information may be obtained by looking at an individual, or by reviewing public records. See McCaslin, 1997 WL 148824, at *1. Thus, the disclosure of this information cannot be considered shockingly degrading or egregiously humiliating.

As for Kennedy's medical information, district and circuit courts have held that there is no legitimate expectation of confidentiality – and, therefore, no constitutional right to privacy – in medical or disability information. See Travis, 12 F. Supp. 2d at 925; Pryor, 171 F.3d at 1288 n.10; Condon v. Reno, 155 F.3d at 464 n.9. In Alexander v. Peffer, the Eighth

Circuit noted that some "highly personal" medical information may implicate a constitutional right to privacy.  See 993 F.2d 1348, 1350-51 (8th Cir.1993).  However, no blanket constitutional privacy protection exists for medical information.  See Cooksey, 289 F.3d at 517 (finding that "all mental health information is not created equal and should not be treated categorically under a privacy rights analysis.").  Here, Plaintiff's Complaint fails to allege facts demonstrating that Plaintiff provided any "highly personal" medical information to the DPS.  See Kiminski, 2013 WL 6872425, at *15 (holding that because the plaintiff did not allege facts indicating what specific medical information she provided to DPS, she failed to state a constitutional claim).  Accordingly, Plaintiff's § 1983 constitutional claims based on Defendants allegedly accessing her address, color photograph, date of birth, weight, height, eye color, driver identification number, driving record, and medical information fail.

However, Plaintiff argues that, in addition to the information mentioned above, Minnesota driver's license records contain an individual's social security number.  (Compl. ¶ 113 [Doc. No. 1].)  Although the Court doubts whether this information could even create a recognizable privacy interest, Plaintiff's claim still fails because she does not sufficiently allege that her social security number was obtained.  She states that Defendants accessed her social security number merely "upon information and belief."  (Id. ¶ 54.)  Kennedy does not offer any allegations, facts, or affidavits to substantiate her "belief" that Defendants accessed her social security number.  Therefore, Kennedy's Complaint fails to "raise a reasonable expectation that discovery will reveal evidence of [the claim]."  See Twombly, 550 U.S. at 556.

As noted above, in Count III, Plaintiff also seeks to impose supervisory liability under § 1983 on the entity and supervisor Defendants, for an alleged failure to monitor and enforce the rules, or to train, supervise, and impose proper discipline.  (See Compl. ¶¶ 260-82 [Doc. No. 1].)  However, because Plaintiff has failed to state a claim for an underlying constitutional violation by any individual Defendant, Plaintiff has also failed to state a claim as to the entity and supervisor Defendants.  See Brockinton v. City of Sherwood, Arkansas, 503 F.3d 667, 673 (8th Cir. 2007) (noting that a county sheriff could not be held individually liable under § 1983 on a supervisory theory where the allegations did not establish an underlying constitutional violation by the county deputy); McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005) (explaining that "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").  For the same reason, Plaintiff's claim in Count IV fails against the Defendant Commissioners and the DPS Does.  (See Compl. ¶¶ 283-300 [Doc. No. 1].)  Because Plaintiff has failed to state a claim for an underlying constitutional violation by any individual Defendant, Plaintiff has also failed to state a claim as to the Defendant Commissioners and the DPS Does.  Therefore, to the extent that Plaintiff's § 1983 claims, as stated in Counts II, III, and IV of the Complaint, are based on an underlying constitutional violation, those claims are dismissed.

### c.  Minnesota state law bases

Finally, Plaintiff's § 1983 claims in Counts II, III, and IV, which are grounded on violations of Minnesota state law, also fail.  Although Defendants do not raise this argument in their briefs, the Court is guided by its holding in Rasmussen.  See 991 F. Supp. at 1077.

Plaintiff does not identify in her Complaint which of "the laws of the State of Minnesota" she seeks to enforce through § 1983.  (Compl. ¶ 249 [Doc. No. 1].)  However, as noted by the Eighth Circuit, "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983."  Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993) (citation omitted).  For the foregoing reasons, Counts II, III, and IV of Plaintiff's Complaint, fail to state a claim for relief and must be dismissed.

### 2.  Count V: Intrusion Upon Seclusion

Plaintiff also alleges a claim for common law invasion of privacy – namely, that Defendants intruded upon her seclusion.  (See Compl. ¶¶ 301-07 [Doc. No. 1].)  In Minnesota, intrusion upon seclusion occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person."  Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998).  "The tort has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy."  Swarthout v. Mutual Service Life Insurance Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001) (citation omitted).

Generally, what is "highly offensive" is a question of fact for the jury, and becomes a question of law only "if reasonable persons can draw only one conclusion from the evidence."  Id. at 745.  In determining whether an intrusion is offensive, courts consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded," and "the number and

22

frequency of the intrusive contacts." Bauer v. Ford Motor Credit Co., 149 F. Supp. 2d

1106, 1109 (D. Minn. 2001).  The interference must be a "substantial one, of a kind that

would be highly offensive to the ordinary reasonable [person], as the result of conduct to

which the reasonable [person] would strongly object."  Swarthout, 632 N.W.2d at 745

(emphasis added).  Therefore, while an individual may have a reasonable expectation of

privacy in nude photographs of herself or in her private medical information, she does not

have a reasonable expectation of privacy in discussing termination of her employment.

See Lake, 582 N.W.2d at 235 (stating that "[o]ne's naked body is . . . generally known to

others only by choice" and "is a type of privacy interest worthy of protection");

Swarthout, 632 N.W.2d at 745 (reversing summary judgment on an intrusion upon

seclusion claim involving private medical information); Groeneweg v. Interstate

Enterprises, Inc., No. A04-1290, 2005 WL 894768, at *6 (Minn. Ct. App. Apr. 19, 2005)

(holding that the plaintiff had no legitimate expectation of privacy at a meeting with co-

workers in which her termination was discussed).

    In Nelson, Rasmussen, and Kampschroer v. Anoka County, this Court analyzed

the viability of claims for intrusion upon seclusion under Minnesota law in the context of

alleged DPPA violations.  In Nelson and Rasmussen, the plaintiffs alleged that the

defendants intruded upon their seclusion by accessing, or allowing access to, their motor

vehicle records.  Nelson, 2013 WL 5888235, at *8; Rasmussen, 991 F. Supp. 2d at 1078-

79.  In both cases the Court found that the expectation of privacy in, and the sensitive

nature of, driver's license information is low because individuals frequently show their

driver's license to strangers and because most of the information contained in driver's

license records is public.  For instance, the <u>Nelson</u> Court explained that "a person can ascertain another's likeness, height, weight, and eye color upon viewing him or her and may be able to ascertain another's driver's license status or address through public records."  2013 WL 5888235, at *8.  Since the plaintiffs in either case did not allege that the records at issue contained a social security number or financial or medical information, the Court held that "no reasonable person could consider the intrusion . . . highly offensive."  <u>Id.</u>; <u>Rasmussen</u>, 991 F. Supp. 2d at 1078-79.

In <u>Kampschroer</u>, the plaintiffs claimed that in addition to their "home address, color photographs, dates of birth, eye color, heights, weights, driver identification numbers," the defendants accessed their "medical and social security information."  No. 13-cv-2512 (SRN/TNL), 2014 WL 4988405, at *15 (D. Minn. Oct. 7, 2014).  Similar to this Court's holding in <u>Nelson</u> and <u>Rasmussen</u>, in <u>Kampschroer</u> it held that "[n]o reasonable person could find that the alleged access of a home address, photographs, dates of birth, eye color, heights, weights, and driver identification numbers meets the 'highly offensive' threshold."  <u>Id.</u>  As for the medical information and social security number, the Court explained that the plaintiffs' complaint failed to adequately allege access of this data.  <u>Id.</u>  The Court emphasized that "[m]erely alleging [that such information was accessed] 'on information and belief' [was] insufficient."  <u>Id.</u>

Analogous to the plaintiffs' allegations in <u>Kampschroer</u>, here, Kennedy alleges that Defendants accessed her home address, color photograph, date of birth, eye color, height, weight, driver identification number, and medical and social security information. (Compl. ¶ 164 [Doc. No. 1].)  As noted above, the tort for intrusion of privacy has three

elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy.  Swarthout, 632 N.W.2d at 744.  Plaintiff contends that Defendants intruded on her privacy by impermissibly accessing her private data.  (See generally Compl. [Doc. No. 1].)  She claims that she submitted her private data "because of the promise of confidentiality made by DPS."  (Compl. ¶¶ 174-75 [Doc. No. 1].)  The Court assumes, *arguendo*, that Kennedy has pled facts demonstrating the first element of the tort – intrusion.  Thus, the Court proceeds by discussing whether Kennedy sufficiently pled the second and third elements of the tort.

The Court begins by addressing Plaintiff's claim based on the access of her home address, color photograph, date of birth, eye color, height, weight, and driver identification number.  The Court finds that no reasonable person could have a legitimate expectation of privacy in this data.  See Nelson, 2013 WL 5888235, at *8; Rasmussen, 991 F. Supp. 2d at 1078-79.  Nor does the alleged access of this data meet the "highly offensive" standard.  See id.  This information is not particularly sensitive in nature, as individuals routinely turn over such information when they show their driver's license.  Moreover, much of this information is apparent from looking at an individual or through public documents.  See, e.g., Nelson, 2013 WL 5888235, at *8; Rasmussen, 991 F. Supp. 2d at 1077-78; Kampschroer, 2014 WL 4988405, at *14-15, Bass v. Anoka County, el al., 998 F. Supp. 2d 813, 825 (D. Minn. 2014); Mallak v. Aitkin County, et al., 9 F. Supp. 3d 1046, 1065 (D. Minn. 2014).

The Court now turns to addressing the validity of Kennedy's state law claim based on the medical information she provided to DPS.  As noted above, Kennedy does not

specify what type of medical information she submitted.  While some medical details may be "highly personal," an individual does not have a legitimate expectation of privacy in all types of medical information he or she provides.  See Alexander, 993 F.2d at 1350-51; Cooksey, 289 F.3d at 516.  Here, Plaintiff failed to provide the Court with the requisite facts to determine if the alleged medical information that she provided was indeed highly personal.  Therefore, Kennedy failed to state an actionable intrusion of privacy claim based on the medical information she submitted to DPS.

As for Kennedy's social security number, while Plaintiff may have a legitimate expectation of privacy in it, the Complaint does not adequately allege access of this information.  Plaintiff alleges that Defendants accessed her social security number "upon information and belief."  (Compl. ¶ 54 [Doc. No. 1].)  It is insufficient to merely allege that this information was accessed "on information and belief."  Kampschroer, 2014 WL 4988405, at *15.  Although Plaintiff's Complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Plaintiff's Complaint fails to meet this threshold with respect to her allegations about Defendants viewing her social security number.

Kennedy argues that given the "sheer number of accesses" alleged, a reasonable person would find Defendants' actions "highly offensive."  (Pl.'s Resp. to Defs. at 37 [Doc. No. 13].)  The Court disagrees.  Although the Court may consider the "the number and frequency of the intrusive contacts" to determine if the intrusion was offensive, Bauer, 149 F. Supp. 2d at 1109, as the Court explained above, the 71 alleged lookups are

insufficient to prove that the specific information accessed was "highly offensive."  The case law demonstrates that Plaintiff does not have a legitimate expectation of privacy in most of the categories of information she submitted to the DPS.  And, Plaintiff failed to allege sufficient facts to show that her social security number was in fact obtained by Defendants, or that any highly sensitive medical information was accessed.

Therefore, the Court concludes that Plaintiff fails to state a claim for common law invasion of privacy, and dismisses this claim against all Defendants.  Because the Court finds that Kennedy failed to allege sufficient facts to substantiate her state law claim against Defendants, the Court does not address Plaintiff's statute of limitations argument as it applies to this claim.

### 3.   Count I: DPPA Claim

Given the Court's dismissal of Plaintiff's Counts II, III, IV, and V, the only remaining claim to address is Plaintiff's Count I.  Below, the Court addresses each Defendant's motion and arguments individually.

### a.   Defendants City of Braham and Chief Knowles

Plaintiff alleges that Chief Knowles accessed her private data 49 times.  (Compl. Id. ¶ 144-46 [Doc. No. 1].)  To support her allegations, Plaintiff attached to her Complaint an excerpt from the DPS audit.  (Compl., Ex. A [Doc. No. 1-1].)  The excerpt identifies the Entity Defendant responsible for each lookup, and lists the dates and times of each alleged individual lookup.  (See id.)  Defendants City of Braham and Chief Knowles argue that Kennedy's DPPA claim must be dismissed because: (1) Plaintiff's

claim is barred by the statute of limitations;[3] (2) her Complaint fails to plead a plausible claim against Defendants; and (3) Chief Knowles is entitled to qualified immunity.  (See Defs.' Mem. at 5-8, 10-12 [Doc. No. 10].)  The Court addresses each of these arguments below.

### (1) Statute of Limitations

"[W]hen it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss."  Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation omitted).  Although, the DPPA does not contain its own statute of limitations provision, the parties agree that 28 U.S.C. § 1658(a)'s general four-year limitations period for civil actions arising under federal law applies.  See 28 U.S.C. § 1658(a); (Defs.' Mem. at 7-8 [Doc. No. 10]; Pl.'s Resp. to Defs. at 17 [Doc. No. 13].)

However, the parties dispute when a DPPA cause of action accrues for purposes of determining when the four-year limitations period begins to run.  Defendants assert that the standard, or injury-occurrence, rule should apply, while Plaintiff argues that the discovery rule should apply.  Under the standard rule, "a claim accrues 'when the plaintiff has a complete and present cause of action.'"  Gabelli v. S.E.C., 133 S. Ct. 1216, 1220 (2013) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).  The discovery rule, on the other hand, "delays accrual of a cause of action until the plaintiff has 'discovered'

---

[3]      Defendants also argue that Plaintiff's § 1983 and common law invasion of privacy claims are barred by the relevant statutes of limitations. Because those claims fail for the reasons discussed above, the Court only addresses Defendants' statute of limitations argument in regard to Plaintiff's DPPA claims.

it." <u>Merck & Co. v. Reynolds</u>, 559 U.S. 633, 644 (2010).  According to the Supreme Court's holding in <u>Gabelli</u>, the discovery rule is an exception to the standard rule, applied only when a defendant's deceptive conduct prevents a plaintiff from even knowing that she or he has been defrauded.  <u>Gabelli</u>, 133 S. Ct. at 1221.

Although the Supreme Court and Eighth Circuit have not ruled on which accrual rule to apply in a DPPA case, lower courts have addressed this issue.  Courts in this District have resoundingly held that the standard rule for accrual applies, such that a DPPA cause of action accrues at the time the improper access of information occurs.  <u>See, e.g.</u>, <u>Mallak</u>, 9 F. Supp. 3d at 1053-55; <u>Sheila Potocnik v. Carlson</u>, 9 F. Supp. 3d 981, 993-94 (D. Minn. 2014); <u>Bass</u>, 998 F. Supp. 2d at 819-20; <u>Brian Potocnik v. Anoka County</u>, No. 13-cv-1103 (DSD/TNL), 2014 WL 683980, at *2 (D. Minn. Feb. 21, 2014); <u>McDonough v. Al's Auto Sales, Inc.</u>, No. 13-cv-1889 (DSD/FLN), 2014 WL 683998, at *2 (D. Minn. Feb. 21, 2014); <u>Rasmussen</u>, 919 F. Supp. 2d at 1079; <u>Kampschroer</u>, 2014 WL 4988405, at *5-6; <u>Kost v. Hunt</u>, 998 F. Supp. 2d 1121, 1126-30 (D. Minn. 2013) (finding that the exceptional nature of the discovery rule, the text and structure of § 1658, and the substantive area covered by the DPPA, all support application of the standard rule).

Those courts' holdings are consistent with the Supreme Court's description of when the discovery rule should apply.  In <u>TRW Inc. v. Andrews</u>, the Supreme Court limited application of the discovery rule to a few contexts: fraud or concealment, latent disease, and medical malpractice.  <u>See</u> 534 U.S. 19, 27 (2001).  Accordingly, here, the Court applies the standard rule for accrual to Plaintiff's DPPA claims.

Despite this precedent, Plaintiff argues that the Court should apply the discovery rule because "Congress provided no directive on the applicability of the discovery or [injury-]occurrence rules when referring to § 1658(a)." (See Pl.'s Resp. to Defs. at 19 [Doc. No. 13].) She argues that because § 1658 applies the discovery rule in subsection (b)(1), and the injury-occurrence rule in subsection (b)(2), then Congress must not have intended the injury-occurrence rule to be the default rule for § 1658(a). (Id. at 19-20.) Kennedy misreads § 1658. As this Court explained in Rasmussen, Congress amended § 1658 by adding only subsection (b), which incorporates the discovery rule. 991 F. Supp. 2d at 1082. However, when subsection (b) was added, Congress did not additionally amend subsection (a). Id. Since subsection (b) expressly incorporates the discovery rule and subsection (a) does not, through amending § 1658, Congress demonstrated that subsection (a) does *not* incorporate the discovery rule. Id. (citing Gross v. Max, 906 F. Supp. 2d 802, 812-13 (N.D. Ind. 2012)).

Plaintiff raises numerous arguments in an attempt to distinguish her case, and argue that the discovery rule applies to DPPA claims. First, Kennedy contends that courts construing general statutes of limitation apply the discovery rule unless Congress manifests a different intent. (See Pl.'s Resp. to Defs. at 18 (citing Comcast of Illinois X v. Multi-Vision Elecs., Inc., 491 F.3d 938 (8th Cir. 2007) [Doc. No. 13].) Plaintiff relies in part on this Court's decision in In re Weldeabzghi, 2013 WL 717755 (D. Minn. Feb. 27, 2013). (See id. at 28.) Plaintiff's reliance on this case is misplaced. In In re Weldeabzghi, this Court cited to Eighth Circuit precedent establishing that claims accrue, for purposes of the statute of limitations in 28 U.S.C. § 2401(a), "when the plaintiff

'either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim.'"  2013 WL 717755, at *6 (quoting Izaak Walton League of Am., Inc. v. Kimbell, 558 F.3d 751, 759 (8th Cir. 2009)).  However, as discussed herein, Congress manifested a different intent for the applicable statute of limitations period for 28 U.S.C. §1658(a).  The Court disagrees with Plaintiff that by amending subsection (b), and not subsection (a), "Congress was silent on the discovery or injury-occurrence rule."  (Pl.'s Resp. to Defs. at 28 n.3 [Doc. No. 13].)  In fact, in TRW Inc., the Supreme Court stated that a directive from Congress need not be explicit – it may also be implied from the text or structure of a particular statute.  TRW Inc., 534 U.S. at 27-28 (holding that the text and structure of the Fair Credit Reporting Act ("FCRA") demonstrates that "Congress implicitly excluded a general discovery rule by explicitly including a more limited one").

Plaintiff also misapplies the Supreme Court's holding in Gabelli.  Plaintiff argues that in Gabelli, the Supreme Court did not rule out the applicability of the discovery rule "when a statute does not speak to the issue."  (See Pl.'s Resp. to Defs. at 27 [Doc. No. 13].)  Although this is true, in Gabelli, the Supreme Court found that the statute in fact spoke to the statute of limitations issue.  Therefore, the Gabelli Court applied the standard rule because there was a "lack of textual, historical, or equitable reasons to graft a discovery rule onto the statute of limitations [in 28 U.S.C. § 2462]," which governs many penalty provisions.  See Gabelli, 133 S. Ct. at 1224.  Similarly, here, the relevant DPPA provision also speaks to the statute of limitations issue.  As the Court explained above, the textual amendments to the DPPA indicate Congress' intent for the standard accrual rule to apply to § 1658(a).

31

Finally, Plaintiff mischaracterizes her own experience of allegedly being "defrauded" by Defendants.  Kennedy correctly states that the <u>Gabelli</u> Court refused to apply the discovery rule in the context of an SEC enforcement action because: (1) the SEC was dissimilar from a typical defrauded plaintiff, since it had powerful tools at its disposal to combat fraud; and (2) the SEC was not seeking typical relief, since it was seeking penalties as opposed to damages. (<u>See</u> Pl.'s Resp. to Defs. at 24-25 (citing <u>Gabelli</u>, 133 S. Ct. at 1222-23) [Doc. No. 13].)  However, Plaintiff incorrectly characterizes herself as the typical defrauded plaintiff.  (<u>See</u> <u>id.</u> at 26-27.)

The nature of the injury addressed by the DPPA – the obtaining of motor vehicle record information for an impermissible purpose – is not in the same category as fraud, concealment, latent disease, or medical malpractice because there is no similarly deceptive conduct or concealment.  Rather, the violation occurs from accessing the information without a permissible purpose, which is more akin to the type of injury the FCRA is meant to address.  Moreover, although Plaintiff describes the accesses as "surreptitious, concealed, and hidden," these characterizations misstate the relevant facts. (Compl. ¶ 118 [Doc. No. 1].)  Plaintiff received her DPS audit in a timely fashion after she requested it in 2013.  (<u>Id.</u> ¶¶ 129, 141.)  Thus, neither Chief Knowles, nor any of the other Defendants, concealed their accesses.  While it is true that a plaintiff may not be aware of accesses of her personal data unless she requests an audit, not knowing about the lookups does not equate to fraud or purposeful concealment.  As a judge in this District noted in <u>Mallak</u>, "[m]erely being unknown is insufficient, the information must also be unknowable."  91 F. Supp. 3d at 1054-55 (internal citations omitted).

Accordingly, Plaintiff incorrectly analogizes her case to a series of cases that involve

defendants who wrongfully concealed material facts.  (See Pl.'s Resp. to Defs. at 26, 28

[Doc. No. 13].)  Simply because the purpose of the DPPA is to protect basic privacy

rights (id. at 20-21) does not mean that the discovery rule applies, nor does it mean that

the accesses of Plaintiff's information were concealed from her.  (Cf. id.)  Therefore, the

substantive area governed by the DPPA does not require application of the discovery

rule.

Moreover, the Court disagrees with Plaintiff's characterization that Knowles

defrauded her by trying to cover up and conceal the fact that he accessed her information

through the DPS database.  (See id. at 27.)  Kennedy did not alert Chief Knowles to the

fact that she requested an audit until after she had submitted her request to DPS.  (See

Compl. ¶¶ 131-40 [Doc. No. 1].)  Both the interaction Kennedy had with Chief Knowles

at the graduation party, and the phone call that Kennedy later received from Chief

Knowles, occurred after she requested the audit, but before she received the results.  (See

id.)  Chief Knowles' (1) alleged acknowledgement of the fact that he illegally accessed

Plaintiff's data, (2) alleged phone call to Plaintiff, and/or (3) alleged false statement to

Chief Administrator Hoy about the fact that Kennedy requested him to access her private

data (id. ¶ 148), did not prevent Plaintiff from accessing the audit report and then filing

this cause of action.  None of the three actions detailed above prevented Kennedy from

discovering the DPS lookups through requesting the audit.  See Kansas City, Missouri v.

Federal Pacific Electric Co., 310 F.2d 271, 277 (8th Cir. 1962) (noting that "one who

wrongfully conceals material facts and thereby prevents discovery of his wrong or the

fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him, thus taking advantage of his own wrong, until the expiration of the full statutory period from the time when the facts were discovered or should, with reasonable diligence, have been discovered.") (internal quotations and citation omitted).  Therefore, even if the Court were to characterize Chief Knowles' actions as an attempt to conceal his allegedly illegal activity, his deceptive conduct did not in fact defraud Plaintiff or prevent her from knowing that she had been defrauded.  See Gabelli, 133 S. Ct. at 1221.

Based on the foregoing, the standard rule for accrual applies to Plaintiff's DPPA claims.  The Complaint in this case was filed on January 23, 2014, so Plaintiff's DPPA claims that are based on allegations of improper conduct occurring more than four years prior to that date – i.e., prior to January 23, 2010 – are barred.  Accordingly, the Court finds that all eighteen of Chief Knowles' lookups fall outside the statute of limitations. The DVS audit excerpt shows that a City of Braham officer accessed Kennedy's information once on July 23, 2007; once on May 4, 2009; once on May 5, 2009; three times on May 6, 2009; once on May 12, 2009; once on October 8, 2009; four times on November 10, 2009; once on December 25, 2009; and five times on December 31, 2009. (See Compl., Ex. A at 1-4 [Doc. No. 1-1].)  These accesses occurred before January 23, 2010; and thus, are not actionable.  However, the remaining thirty-one accesses that occurred after the cut-off date are actionable.  (See id.)

**(2) Plausibility**

The Court proceeds by addressing the plausibility of the DPPA claims against

Defendants City of Braham and Chief Knowles, which are not barred by the statute of

limitations.  Defendants contend that Plaintiff failed to state a DPPA claim pursuant to

Iqbal and Twombly.  (Defs.' Mem. at 5-7 [Doc. No. 10].)  To state a claim under the

DPPA, a plaintiff must allege that: (1) a defendant knowingly obtained, disclosed, or used

personal information; (2) from a motor vehicle record; (3) for a purpose not permitted.  18

U.S.C. § 2724(a).  Here, the parties dispute whether the third element of the claim is pled

sufficiently: whether Defendants obtained Plaintiff's private data "for a purpose not

permitted."

Defendants argue that "[b]ecause impermissible purpose is an element of a

plaintiff's DPPA case, Kennedy was required to plead facts that, if believed, give rise to a

reasonable inference that Defendants accessed her information with an impermissible

purpose." (Defs.' Mem. at 6 [Doc. No. 10].)  Defendants claim that "there are simply no

facts alleged in the Complaint that raise a plausible inference of an impermissible use by

Defendants." (Id. at 7.)   In her response, Plaintiff contends that she need not prove an

impermissible purpose for each obtainment.  (See Pl.'s Resp. to Defs. at 12 [Doc. No.

13].)  Rather, Plaintiff explains that she only needs to plausibly allege that "Defendant

[Chief Knowles] did not have a proper purpose [according to the permitted purposes

stipulated in the DPPA]" to access her data.  (Id.)  The Court agrees.

The DPPA outlines fourteen permissible purposes for a government official to access

an individual's private driver's license information.  See 18 U.S.C. § 2721(b).  Relevant for

this case, a law enforcement officer may access an individual's personal information in order to carry out the functions of the law enforcement agency.  See 18 U.S.C. § 2721(b)(1).  Here, however, Plaintiff alleges that Chief Knowles, and the other individual and entity Defendants, did not access her information for any purposes permitted by the DPPA.  (See Compl. ¶¶ 49-50, 157-58 [Doc. No. 1].)  Therefore, she has pled all the essential elements of her DPPA claims.  Kennedy is not shifting the burden to Defendants to detail a proper purpose for the access of the data (see Defs.' Mem. at 6-7 [Doc. No. 10]), though Defendants are welcome to offer such a purpose.  Rather, she merely alleges that Defendants did not access her data for any of the statutorily permissible purposes outlined in the DPPA; and, as a result, Defendants' purpose was necessarily not permitted under the DPPA.

Furthermore, sufficient facts exist for the Court to infer that Plaintiff's personal information was obtained for a purpose not permitted under the DPPA.  The Complaint alleges that:

- Kennedy knows Chief Knowles because she was friends with his wife, and because she attends the same church as Chief Knowles.  (Compl. ¶¶ 29-30 [Doc. No. 1].)

- Chief Knowles admitted to Chief Administrator Hoy and to Plaintiff that he searched for Kennedy's private data through the DPS database.  (Id. ¶¶ 135, 146-47.)

- Chief Knowles was responsible for all 49 lookups of Plaintiff's information.  (Id. ¶¶ 146-47.)

- Chief Knowles called Kennedy in and told her "let's be clear, you asked me to look you up and it was four times."  (Id. ¶ 138.)  Not only does the audit indicate that Chief Knowles accessed her data 49 times, as opposed to four

times, but also, Plaintiff states that she never asked Chief Knowles to look up her private data.  (Id.)

- Chief Knowles purportedly obtained Plaintiff's information out of curiosity or romantic attraction, purposes that are not permitted by the DPPA.  (Id. ¶ 157.)

- Plaintiff's personal information was searched for not by license plate number, but rather, by her name.  (Id. ¶ 56.)

- Officers and personnel from several different departments and agencies accessed Kennedy's private information approximately 71 times from 2007 to 2012.  (Compl., Ex. A [Doc. No. 1-1].)

- Kennedy has never been advised that she was a suspect or even an interested party in any civil, criminal, administrative, or arbitral proceeding.  (Compl. ¶¶ 48, 56, 157-58 [Doc. No. 1].)

- Kennedy has "not committed any act that would entitle Entity Defendants and Individual Defendants to access her information under any of the permissible exceptions."  (Id. ¶ 56.)  Additionally, she has "eliminated permissible access from the accesses" alleged in her Complaint, and bolstered by the DPS audit excerpt.  (Id.)

Under Iqbal and Twombly, a complaint must contain facts with enough specificity "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, Iqbal, 556 U.S. at 678.  Here, Plaintiff's cause of action is not supported by "mere conclusory statements."  Cf. id.  Rather, the facts listed above, altogether suggest that Chief Knowles' lookups of Plaintiff's private information did not occur in the course of typical law enforcement functions.  Moreover, while the "volume of lookups alone is insufficient to allow a plaintiff to state a claim, it can be relevant factual support for a claim."  See Kolls v. City of Edina, et al., No. 14-cv-370 (DWF/HB), 2014 WL 5810332, at *5 (D. Minn. Nov. 7, 2014) (citing Mallak, 9 F. Supp. 3d at 1058).  Here, Plaintiff alleges

Chief Knowles impermissibly accessed her data 49 times.  Id. at *1.  Therefore, the volume

of lookups in this case is another factor that nudges this case across the "line from

conceivable to plausible."  Twombly, 550 U.S. at 570.[4]

These facts, therefore, distinguish this case from others in this District in which the

courts found that the plaintiffs failed to state DPPA claims.  In some of these cases, the

plaintiff unsuccessfully argued that a sheer number of accesses created a reasonable

inference of a violation.  E.g., Bass, 998 F. Supp. 2d at 821; McDonough, 2014 WL 683998,

at *3.  And, in Traub v. City of Saint Paul, the plaintiff relied on the lookups, her

contemporaneous involvement in some publicized activity, and the absence of direct

interaction with any defendant, to infer that the lookups were for an improper purpose.

Traub v. City of Saint Paul, Civ. No. 13-3017 (MJD/JJK), 2014 WL 2881484, at *4 (D.

Minn. June 25, 2014).  The Court, however, rejected such an inference, noting that:

> A total of twelve lookups have been alleged against eight Defendants; one
> look-up is alleged with respect to five Defendants; no more than three
> accesses are alleged by any one Defendant; and none of the motor vehicle
> record searches was conducted at a "questionable" time of day or night.
> There is no allegation that Plaintiff's records were accessed by name rather
> than license plate number, and there is no significant cluster of locations or
> law enforcement agencies making the record requests.

Id.  Unlike the plaintiffs in these cases, Kennedy alleges that her information was accessed

by name, and she also identified the specific government employee, whom she directly

---

[4]     Consequently, the Court finds that this case is distinguishable from Mitchell v.
Aitkin County, et al., No. 13-cv-2167, 2014 WL 835129 (D. Minn. Feb. 27, 2014).
Specifically, the Court finds that the facts presented by Plaintiff sufficiently establish a
plausible inference or reflect an "outward manifestation" of an impermissible purpose to
state a claim at this early stage.  This finding does not require an inference as to "what
went on in a particular officer's mind" or an impermissible burden shift to Defendants.
See id. at *5-9.

interacted with, and who admitted to accessing her data.  (Compl. ¶¶ 56, 135, 146-47 [Doc.

No. 1.])  Kennedy's relationship with Chief Knowles and the interactions she has had with

him in person and over the phone, in combination with Plaintiff's claim that she has never

been an interested party in any law enforcement matter, support the inference that a

permissible purpose for the lookups did not exist.  See Twombly, 550 U.S. at 555.  At this

early stage of litigation, Plaintiff need not plead – and indeed, does not know without

discovery – the precise impermissible purpose for which her information was accessed.  See

Smythe v. City of Onamia, No. 12-cv-3149 (ADM/LIB), 2013 WL 2443849, at *6 (D.

Minn. June 5, 2013) (noting that "a person may still violate the DPPA if he retrieves motor

vehicle records and does not misuse the information; simply retrieving records without a

permitted purpose is a violation.").  Therefore, because Plaintiff sufficiently pled that her

personal information was knowingly obtained for a purpose not permitted under the DPPA,

dismissal of the DPPA claims against the City of Braham and Chief Knowles is

inappropriate.

### (3) Qualified Immunity

Finally, the Court considers whether Chief Knowles is entitled to qualified

immunity for Plaintiff's DPPA claims that are not barred by the statute of limitations.

"Qualified immunity shields government officials from [personal] liability and the

burdens of litigation . . . unless the official's conduct violates a clearly established

constitutional or statutory right of which a reasonable person would have known."

Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013).  Thus, determining whether

qualified immunity applies involves consideration of two questions: (1) whether the facts

alleged constitute a violation of a constitutional or statutory right, and (2) whether that right was "clearly established" at the time of the alleged violation.  LaCross v. City of Duluth, 713 F.3d 1155, 1157-58 (8th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

As for the second question, "'[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  Williams v. Herron, 687 F.3d 971, 977 (8th Cir. 2012) (quoting Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2083 (2011)).  The court must look to the state of the law at the time the alleged misconduct occurred.  Id. (citation omitted).  Although there need not have been a case directly on point in order for the law to have been clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'"  Smith v. City of Minneapolis, 754 F.3d 541, 546 (8th Cir. 2014) (quoting al-Kidd, 131 S. Ct. at 2083).

As discussed above, Plaintiff sufficiently alleged that Chief Knowles violated her statutory rights under the DPPA.  However, Defendants argue that, even assuming that access of a motor vehicle record constitutes a violation of the DPPA, it was not "clearly established" that such conduct violated the DPPA at the time the alleged lookups occurred.  (See Defs.' Mem. at 12 [Doc. No. 10].)  Plaintiff, on the other hand, argues that the statutory language itself provided sufficient notice to Chief Knowles that obtaining private driver's license information without a permissible purpose was prohibited.  (See Pl.'s Resp. to Defs. at 42-43 [Doc. No. 13].)  Moreover, Kennedy argues

that Chief Knowles *personally* knew that his conduct violated the DPPA.  (See Compl. ¶ 134 (alleging that Chief Knowles told Kennedy that accessing her private driver's license information "would not be allowed or legal") [Doc. No. 1].)

The Court agrees with Kennedy.  The DPPA, enacted in 1994, clearly prohibits "knowingly obtain[ing] . . . personal information, from a motor vehicle record, for a purpose not permitted."  18 U.S.C. § 2724.  By the time the alleged lookups began in 2007 – thirteen years after the DPPA took effect – Chief Knowles would have been on notice of the statute and its prohibitions.  See Mallak, 2014 WL 1285807, at *13.

Here, as was the case in Kampschroer, the unlawfulness of Defendant's alleged conduct would have been readily apparent to Defendant at the time it occurred because that conduct contravenes the plain language of the statute.  See Collier v. Dickinson, 477 F.3d 1306, 1311 (11th Cir. 2007) (denying qualified immunity because the DPPA's plain language prohibiting the release of personal information without the express consent of the person to whom the information relates "gave clear notice" to the defendant government officials that the release of such information without consent violated federal law).

Moreover, if the Court accepts the statement Chief Knowles made to Plaintiff as true, then Chief Knowles not only should have known that his conduct was prohibited by the DPPA, but, in fact, he *did* know that his conduct was prohibited.  (Compl. ¶ 134 [Doc. No. 1].)  Thus, he "knowingly violate[d] the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986) (explaining that "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the

law.")  Accordingly, at this stage of the proceedings – where Plaintiff has adequately alleged the violation of a clearly established statutory right – Chief Knowles is not entitled to qualified immunity on Plaintiff's DPPA claims, which are not barred by the statute of limitations.

### b.  Defendants Dohman and Campion

Defendant Commissioners Campion and Dohman also filed a Motion to Dismiss Plaintiff's Complaint in this case.  The crux of their motion rests on the argument that Kennedy failed to state a claim against the Commissioners, upon which relief could be granted.  (See Def. Commissioners' Mem. at 5-13 [Doc. No. 16].)  In the alternative, the Commissioners argue that they are entitled to qualified immunity for Plaintiff's DPPA claims.  (See id. at 15-17.)  Because the Court concludes that Plaintiff fails to state a claim against the Commissioners and the DPS Does, it does not address the qualified immunity defense.

With respect to Defendants Campion, Dohman, and DPS Does, Plaintiff alleges that they were and are responsible for creating, maintaining, and providing access to the database that included Plaintiff's private data.  (See Compl. ¶¶ 165-66, 169, 206-07 [Doc. No. 1].)  Kennedy alleges that the Commissioners granted access to the DPS database by providing a "a user account and a password without reasonably requiring or ensuring that accesses would be limited to those for a purpose permitted under the DPPA."  (Id. ¶ 61.)

To be liable under the DPPA, the Defendants *themselves* must have acted with an impermissible purpose.  See Bass, 998 F. Supp. 2d at 820; Nelson, 2013 WL 5888235, at *3; see Kiminski, 2013 WL 6872425, at *9.  As noted in Kiminski, "the provision[s of the

DPPA] may not be stretched to the point of rewriting it so it reaches others at a state agency who gave the officer database access for a legitimate purpose, merely because they did so in a negligent manner."  2013 WL 6872425, at *9.

Here, Plaintiff argues that because the Commissioners knew that they were providing passwords and access to the DPS database to law enforcement officials, then, therefore, the Commissioners are liable under the DPPA.  (See Pl.'s Resp. to Def. Commissioners at 11-14 [Doc. No. 21].)  Kennedy's argument relies upon a misinterpretation of § 2724(a) of the DPPA.  According to § 2724(a), "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable."  18 U.S.C. § 2724(a).  Plaintiff claims that because the term "knowingly" only modifies the act element of disclosing the data, and not the purpose element, then the Commissioners may be held liable.  (See Pl.'s Resp. to Def. Commissioners at 12 [Doc. No. 21].)

However, Kennedy's argument omits a critical step in the requisite statutory analysis.  A person is liable under the DPPA only if he or she has a purpose for obtaining or disclosing the data that is not permitted.  As the relevant statutory language states, the access must be "for a purpose not permitted."  See 18 U.S.C. § 2724(a).  In order to determine the purpose that the information was disclosed "for," the Court must analyze the Commissioners' purpose, not the individual officers' purpose.  Thus, Plaintiff cannot hold the Commissioners liable for enabling law enforcement officials to access the databases if the Commissioners' purpose was permitted – such as enabling law enforcement officials to "carry[] out [their] functions."  See 18 U.S.C. § 2721(b)(1).

Pursuant to the language of the statute, the Commissioners could only be held liable if they not only knew of the misuse, but they permitted access to the databases in order to further the misuse.  See 18 U.S.C. § 2724(a).  Kennedy has not pled facts to support her allegations that the Commissioners had this requisite intent.  Merely alleging that the Commissioners "failed to make any determination of purpose before disclosing information" to law enforcement officers is insufficient.  (See Pl.'s Resp. to Def. Commissioners at 14 [Doc. No. 21].)  Plaintiff does not allege that Campion, Dohman, and DPS Does personally knowingly obtained, disclosed, or used Plaintiffs' personal information from the DPS database for a purpose not permitted.  Plaintiff also does not allege facts supporting the allegation that the Commissioners or DPS Does "improperly granted access to the DPS drivers' license database or that the Commissioners did not have a proper purpose when making the database available to law enforcement."  (See Def. Commissioners' Mem. at 9 [Doc. No. 16].)

As was the case in Mallak, here, "in reality, Plaintiff's allegations amount to a claim that the Commissioner Defendants violated the DPPA by releasing the information to their respective employees and agencies for a permitted purpose (i.e., doing their jobs), but without proper safeguards, training, or monitoring."  Mallak, 9 F. Supp. 3d at 1067 (emphasis original).  However, as the Mallak Court explained, "[t]his is not the same as releasing the information for an impermissible purpose."  Id.  Plaintiff's reading requires a deviation from the plain language of the statute and is not supported by law.  See Kiminski, 2013 WL 6872425, at *8.  Plaintiff must demonstrate that the Defendant Commissioners disclosed the data for a purpose not permitted with specific allegations.

44

However, she fails to do so.  "In fact, the type of situation described by Plaintiff is explicitly contemplated and addressed by the DPPA itself, which allows the Attorney General to impose civil penalties upon a state department of motor vehicles that has a 'policy or practice of substantial noncompliance' with respect to driver's license information and records."  Mallak, 9 F. Supp. 3d at 1067 (citing 18 U.S.C. § 2723(b); Kiminski, 2013 WL 6872425, at *8).  Furthermore, any allegations made by Plaintiff with respect to the February 2013 hearing (See Compl. ¶ 205 [Doc. No. 1]), cannot support claims regarding what the Commissioners knew or did for the time period relevant to this lawsuit (2007 to 2012).  Simply put, Plaintiff has not sufficiently alleged an impermissible purpose with respect to the Defendant Commissioners.

Moreover, to the extent that Kennedy contends that the Commissioners are subject to strict liability for the impermissible accesses made by the individual Defendants, the Court finds the reasoning in Sheila Potocnik persuasive and adopts that reasoning herein.  See Sheila Potocnik, 9 F. Supp. 3d at 988-90.

Plaintiff also argues that the Commissioners should be held liable under the DPPA because they did not discern the purpose for every individual obtainment of Plaintiff's information.  (See Pl.'s Resp. to Def. Commissioners at 25 [Doc. No. 21].)  However, "the DPPA does not impose a duty of care on the Commissioners."  Sheila Potocnik, 9 F. Supp. 3d at 991.  Plaintiff argues that Gordon v. Softech Intern., Inc., 726 F.3d 42 (2d Cir. 2013), creates a duty of care to which the Commissioners must be held with respect to driver's license data.  (See Pl.'s Resp. to Def. Commissioners at 20-21 [Doc. No. 21].)  In Kiminski, the court noted that the Gordon Court limited its own holding to private

45

resellers and explained it had not conducted an analysis to make its determinations more generally applicable. 2013 WL 6872425, at *8-9 (citing Gordon, 726 F.3d at 57 n.14). The Court finds the reasoning in Kiminski persuasive and adopts it herein. Thus, Kennedy's argument about the Commissioners' requisite duty of care is also unavailing.

Therefore, the Commissioners cannot be held liable for violating the DPPA and the Court dismisses Kennedy's DPPA claims against these Defendants. In sum, the Court grants the Commissioners' Motion to Dismiss in its entirety.

## IV.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendants City of Braham and Chief Knowles' Motion to Dismiss [Doc. No. 7] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

2. Defendant Commissioners' Motion to Dismiss [Doc. No. 15] is **GRANTED**.

Dated: December 12, 2014              s/Susan Richard Nelson
                                      SUSAN RICHARD NELSON
                                      United States District Court Judge